MITCHELL S. BISSON, ESQ.
Nevada Bar No. 11920
LAW OFFICES OF MITCHELL S. BISSON
911 N. Buffalo Dr., Ste. 202
Las Vegas, NV 89128
T: (702) 402-6990
Email: MBisson@BissonLegal.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| HILLCREST INVESTMENTS, LTD., a foreign corporation; HILLCREST PROJECTS, LLC, a foreign limited liability company;<br><br>           Plaintiffs,<br><br>    vs.<br><br>CHICAGO TITLE INSURANCE COMPANY, a foreign entity; QUAIL VALLEY WATER DISTRICT, a foreign entity; 11239, LLC, a foreign entity; R.A.M.M. CORP., a Nevada Corporation;<br><br>           Defendants. | CASE NO.: 2:22-cv-00406-RFB-VCF<br><br>**RESPONSE TO DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S MOTION TO DISMISS** |

      Plaintiffs, HILLCREST INVESTMENTS, LTD. and HILLCREST PROJECTS, LLC, by and through their attorney of record, Mitchell S. Bisson, Esq. of the Law Offices of Mitchell S. Bisson, hereby files this Response to Defendant Chicago Title Insurance Company's Motion to Dismiss, as follows:

/.../.../

/.../.../

/.../.../

Plaintiffs' Response is based on the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any other oral or documentary evidence the Court considers at a hearing on this matter.

DATED this 1st day of July, 2022.

LAW OFFICES OF MITCHELL S. BISSON
*/s/ Mitchell S. Bisson, Esq.*
MITCHELL S. BISSON, ESQ.
Nevada Bar No. 011920
911 N. Buffalo Dr., Ste. 201
Las Vegas, NV 89128
*Attorney for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    FACTS

In its Complaint, Plaintiffs alleged the following facts against Defendant Chicago Title Insurance Company:

This matter pertains to the insurance policy issued by Defendant CTIC related to escrow FWKN-TO14000231. On or about October 15, 2014, Plaintiff purchased various properties pursuant to the terms and conditions of a settlement agreement dated August 27, 2014 (the "Settlement Agreement"). Plaintiff entered into the Settlement Agreement with Ghassan Merhi, Galtar, LLC, Searchlight Highway, LLC, 2027 North Decatur, LLC, Aztec Motors, LLC, Tehachapi Investment, LLC ("Tehachapi"), and GMB, LLC.

In connection with this transaction, the Plaintiff acquired multiple Policies of Title insurance from Defendant CTIC with an effective date of December 5, 2014 (collectively referred to as the "Policy"). After this transaction, the insured Plaintiff discovered that it did not acquire title to Parcel 18 of the Property as described in Schedule A of the Policy, even though Tehachapi had purportedly conveyed this parcel to the Plaintiff. Tehachapi was unable to convey Parcel 18 to the

Plaintiff because Quail Valley had already acquired title to Parcel 18 pursuant to a Collector's Deed.

A claim was made under the policy regarding parcel 18, and Defendant paid out approximately $118,000 on the claim; however, the amount of the payment did not cover all of the costs and legal expenses incurred, nor the costs associated with getting a full release from Quail Valley Water District. Complaint ¶9-15.

The Escrow Instructions required Chicago Title Company to ensure that water rights bearing certificate numbers 48479, 48480, 48481, 48482, 48483 and 66397 were transferred to the Plaintiff. The Escrow Instructions required Galtar, LLC to deposit with escrow a "Quitclaim Deed for Amargosa Water Rights Amargosa Valley ... ". The Escrow Instructions provided that upon the fulfillment of conditions further described there, the escrow was to record the Quitclaim Deed for Amargosa Water Rights Amargosa Valley. In addition, Chicago Title Company was supposed to secure and file appropriate documentation with the Nevada State Water Engineer to clarify that Plaintiff was the rightful owner of those rights, which they failed to do. Complaint ¶17-20.

The Escrow Instructions set the closing date for the transaction on October 15, 2014, and provided that Galtar, LLC was supposed to pay all of the real property taxes owed on the Property it was conveying up to this date. Section 6 of the Escrow Instructions provides that "Cost shall be allocated, and prorations made as provided in the Settlement Agreement." Pursuant to Paragraph 6 of the Settlement Agreement, with the exception of Dunn Mill Fee Parcels and Dunn Mill Lease Parcels, taxes were to be prorated between Galtar and the Plaintiff as of the closing date. The closing did not occur until December 5, 2014; however, Chicago Title prorated taxes as of October 15, 2014. As a result, Plaintiff paid taxes it should not have had to pay. Complaint ¶21-25.

As part of the closing and policy, Galtar was supposed to convey to the Plaintiff the land associated with the following Assessor's Parcel Numbers ("APNs"): 458-100-06, 458-080-02, 459-240-13, and 458- 120-01. The Escrow Instructions and insurance policies required Defendant CTIC

to ensure this happened; yet, Plaintiff never received transfer of such properties. Complaint ¶26-27.

As part of the policy and accompanying Escrow Instructions, Chicago Title was supposed to record a satisfaction of judgment as to Ford v. Gaiter et al., Case No. 08-A-569151 in Clark County, Nevada. As of the date of this filing, no such Satisfaction of Judgment has been recorded. As part of the Policy and Escrow Instruction, Defendant CTIC was required to ensure all defects related to previous lawsuits were resolved. However, as of the date of this filing, such defects still exist and appear on subsequent title reports. Complaint ¶28-31.

After the closing of escrow, Plaintiff became aware of facts that appeared to show a third party – Henry Mulryan – held an ownership interest in APN 0542-141-19-0 and 0542-141-19-1 based upon a 1949 patent from the United States. As a result of Defendant CTIC's failures, and in breach of the Policy, Plaintiff was required to expend approximately $213,000.00 to resolve the issue and obtain such third party's ownership interest. Complaint ¶32-33.

In 2019, prior to the instant action, Plaintiffs filed Case No. 2:19-cv-02065 RFB-EJY, naming Chicago Title of Nevada, Inc. as Defendant. However, during the course of such litigation, Chicago Title of Nevada, Inc. adamantly objected to the inclusion of their related company, Chicago Title Insurance Company. Plaintiff filed a motion to amend to include the current Defendant as a party, but such motion was denied. *However*, Defendant Chicago Title Insurance Company – the current Defendant – was *not* a party to such action, and Plaintiffs' claims against them were *not* resolved via the prior matter.

In the instant matter, Plaintiffs have already discussed this matter with an expert, and recently retained the same to review the title policy and provide an opinion. The expert's preliminary analysis confirms that there remains a cloud on title as a result of the title policy. Exhibit 1 – Expert Report of Jay Hibert.

## II.    LEGAL ARGUMENT

In its Motion to Dismiss, Defendant Chicago Title Insurance Company goes to great lengths to avoid taking responsibility for their past and ongoing failures related to the relevant title insurance policy. Defendant argues that the instant matter should be dismissed on the basis of Res Judicata and the 2 year Statute of Limitations on California title insurance claims.

### A. Res Judicata does not preclude this action.

The doctrine of res judicata does not allow the current Defendant to avoid liability in this case. The Nevada Supreme Court has adopted a three-part test for determining whether claim preclusion applies: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054, 194 P.3d 709, 713 (2008) (internal footnote omitted). Although Defendant attempts to paint the picture that the parties and their privies are the same because they were both involved in the same transaction, this is not sufficient for purposes of claim preclusion. The Defendant in the prior action – Chicago Title of Nevada, Inc. – made it clear *throughout* the prior action that these were unrelated entities and objected to the inclusion of the current Defendant via an amended complaint. To now argue that Plaintiff cannot bring its claim because current Defendant was not added as a party is incredulous. As it became clear in the prior action, the cause of action therein was a breach of contract claim against Chicago Title of Nevada, Inc. for breach of escrow instruction. The *instant* claim is a breach of contract claim against Chicago Title Insurance Company for breach of the title insurance policy and their failure to ensure clean title. The parties are different and the claims are based on different documents. As *these* claims have *not* been adjudicated previously, they are not barred.

Likewise, issue preclusion does *not* bar this action. For issue preclusion to apply: (1) the

issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. *Five Star Cap.*, 124 Nev. at 1055, 194 P.3d at 713, holding modified by *Weddell v. Sharp*, 131 Nev. 233, 350 P.3d 80 (2015).

Here, while there are similar issues from the prior action, the prior action involved a different entity's breach of a *different* agreement – the Escrow Instructions. In the instant action, the issues revolve around the breach of a title insurance policy by the insurer. Furthermore, in the prior action, the title insurance policy itself was not analyzed or ruled upon. Instead, the matter was dismissed after the Court analyzed the *prior Defendants* potential breaches of the Escrow Instructions. Since the Court determined the prior Defendant was not a party to the title policy, it never addressed the title policy claims themselves. As such, the instant issues were *not* "actually litigated" in the prior matter and this action is *not* barred.

Defendant also makes the argument that because Chicago Title Insurance Company *should have been added* to the prior action, they cannot be sued in a separate action. Once again, this argument *completely* ignores the reality that the prior Defendant – Chicago Title of Nevada – objected to and opposed Plaintiffs' attempts *to do this exact thing*. Accordingly, Defendant should not be allowed to benefit from its strategic attempts to avoid liability for its failures. Non-mutual claim preclusion does not apply.

**B. The Statue of Limitations has been tolled.**

Defendant claims that this entire action should be dismissed on the basis that the two year statute of limitation to bring a title insurance claim on a California policy has run. However, Defendant completely ignores that fact that there is an equitable tolling provision that applies to such statute. *Forman v. Chicago Title Ins. Co.*, 32 Cal.App.4th 998, 38 Cal. Rptr. 2d 790 (Cal. Ct.

App. 1995). While Plaintiff does acknowledge that *some* of Defendant's failures were initially discussed in the prior communications between the parties and their counsel, Defendants have *continually* discovered new and ongoing title issues/defects that have arisen since the closing of this transaction and have previously attempted to address and resolve such issues. Here, there are continual, ongoing, clouds upon the title to the property as a result of Defendant's failures to comply with the agreements. As Plaintiff's expert has opined:

10. The Escrow Instructions included language for the "Cancellation of all Lis Pendens." In fact, the Preliminary Report that predated the Escrow Instructions by just over 30 days noted, "A pending court action as disclosed by a recorded notice" affecting parcels 1 through 17. Additionally, the Preliminary Report noted "A pending court action as disclosed by a recorded notice" affecting parcels 2 through 12. These two items clearly affect a property's marketable title and it would be an industry custom to have them removed during a property transfer. For this reason, it would be a standard practice to give the cancellation instruction to escrow during a property transfer, as was done in the subject Escrow Instructions.

11. When receiving a newly issued title insurance policy the custom and practice would be to review it to ensure that all such items potentially affecting marketable title were cancelled as instructed. In fact, the new title insurance policy issued on December 5, 2014 that is the subject of this case, shows no pending court actions as previously noted in the Preliminary Report. The absence of these items would be expected based on the escrow instructions and there would be no reason for a property owner to conduct further research. It would be customary and a standard practice for a property owner to rely on the title insurance policy issued by a title company.

12. On August 30, 2021, as part of a purchase and sale transaction relating to Parcel #9, a Preliminary Report was issued by First American Title Company (Order Number 1504- 6675474). The August 30, 2021 Preliminary Report indicates that the subject property's title is not in a marketable condition. The same pending court actions (Lis Pendens) noted on the Chicago Title Company Preliminary Report dated September 4, 2014 appear as item number 10 and 11 on the August 30, 2021 Preliminary Report issued by First American Title Company.

13. Based on my review of the subject documents, and my professional experience, the title policy No. FWKN-TO14000231 dated December 5, 2014, issued by Chicago Title Insurance Company, would provide coverage for these items because they were not listed as an exception to the policy. In fact, the items are not listed or shown anywhere on the policy issued by Chicago Title Insurance Company.

However, instead of appearing in the prior action, Defendant's related company and

Defendant in the prior action (Chicago Title of Nevada, Inc.) did any and everything to prevent them from being added. As explained above, these issues have yet to be resolved by Defendant, and constitute ongoing harm to which the Statute of Limitations has yet to run.

### III.   CONCLUSION

Based on the foregoing facts and authorities, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion to Dismiss in its entirety.

DATED this 1st day of July, 2022.

LAW OFFICES OF
MITCHELL S. BISSON

*/s/ Mitchell S. Bisson*
MITCHELL S. BISSON, ESQ.
Nevada Bar No. 11920
911 N. Buffalo Dr., Ste. 202
Las Vegas, NV 89128
Email: MBisson@BissonLegal.com
*Attorney for Plaintiffs*

1

2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 1st day of July, 2022, I served a true and correct copy of

the foregoing **RESPONSE TO DEFENDANT CHICAGO TITLE INSURANCE**

**COMPANY'S MOTION TO DISMISS** to the following counsel of record by way of electronic

service via the CM/ECF filing system:

FIDELITY NATIONAL LAW GROUP
NATALIE C. LEHMAN, ESQ.
Nevada Bar No. 12995
8363 W. Sunset Road, Suite 120
Las Vegas, Nevada 89113
Tel: (702) 667-3000
Natalie.Lehman@fnf.com
*Attorneys for Defendant, Chicago Title Insurance Company*

*/s/ Mitchell S. Bisson, Esq.*
Employee of Law Offices of Mitchell S. Bisson